# In the United States Court of Federal Claims

No. 16-43C
(Filed: December 1, 2017)

|  |  |
|---|---|
| ANDREA LEA, Auditor of the State of Arkansas,<br><br>                            Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>                            Defendant. | Keywords: 28 U.S.C. § 1292(d)(2); Interlocutory Appeal; Stay Pending Appeal. |

*David H. Thompson*, Cooper & Kirk, PLLC, Washington, DC, for Plaintiff. *Peter A. Patterson* and *John D. Ohlendorf*, Cooper & Kirk, PLLC, and *Joseph H. Meltzer* and *Melissa L. Troutner*, Kessler Topaz Meltzer & Check LLP, Radnor, PA, Of Counsel.

*Eric P. Bruskin*, Senior Trial Counsel, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Principal Deputy Assistant Attorney General, for Defendant. *Theodore C. Simms, II*, Attorney-Advisor, U.S. Department of the Treasury, and *Albert S. Iarossi*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

On August 8, 2017, this Court issued an Opinion and Order (Order) granting the motion for partial summary judgment filed by Plaintiff Andrea Lea, Auditor of the State of Arkansas (Arkansas). See Lea v. United States, 132 Fed. Cl. 705 (2017). The Court ruled that under the Department of Treasury's regulations, Arkansas is the rightful owner of certain U.S. savings bonds that it does not possess but to which it asserted title pursuant to a state court judgment of escheat issued under the authority of the state's unclaimed property law. See Lea, 132 Fed. Cl. at 724. The federal government has now filed a motion under 28 U.S.C. § 1292(d)(2) to certify this Court's Order for interlocutory appeal and to stay proceedings pending appeal. See Def.'s Mot. to Certify the Court's Order of Aug. 8, 2017 for Interlocutory Appeal and to Stay Proceedings Pending Appeal (Def.'s Mot.), ECF No. 32.

For the reasons set forth below, the Court agrees that its August 8, 2017 opinion involves "a controlling question of law . . . with respect to which there is a substantial

ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(d)(2). Accordingly, the motion to certify is **GRANTED**. In addition, the government's motion to stay proceedings pending appeal is also **GRANTED.**

## DISCUSSION

**I.     The Motion to Certify**

Section 1292(d)(2) of Title 28 provides, in pertinent part, as follows:

> [W]hen any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.[1]

Thus, to certify an interlocutory appeal of its order, the Court must find that the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal may materially advance the ultimate termination of the litigation." As the Wright and Miller treatise observes, "[t]he three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal." 16 Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 3930 (3d ed. Apr. 2017 Update) (footnote omitted).

The Court finds that its Order involves a "controlling question of law." Thus, the federal government's liability in this case turns largely on the proper interpretation of a Treasury Department regulation that was in effect at the time Arkansas requested redemption of the bonds at issue. That regulation—31 C.F.R. § 315.20(b) (2012)—then provided that Treasury "will recognize a claim against an owner of a savings bond . . . if

---

[1] The language of section 1292(d)(2) "is virtually identical to 28 U.S.C. § 1292(b) . . . which governs interlocutory review by other courts of appeals." United States v. Connolly, 716 F.2d 882, 883 n.1 (Fed. Cir. 1983) (en banc). "Because the operative language is identical, the legislative history and case law governing the interpretation of section 1292(b) is persuasive in reviewing motions for interlocutory appeal under section 1292(d)(2)." Abbey v. United States, 89 Fed. Cl. 425, 429 (2009) (citation omitted).

established by valid, judicial proceedings, but only as specifically provided in this subpart."[2]

As described in Lea (and in its ruling on the government's motion to dismiss in LaTurner), the Court held that the state-law proceedings that purported to vest Arkansas with title to the savings bonds at issue, which had been deemed abandoned under state law, were "valid judicial proceedings" within the meaning of the regulation, and that Arkansas was therefore the owner of those bonds. In so holding, the Court rejected the federal government's interpretation of the Treasury regulations (which it found inconsistent with both the language of the regulations and the position that Treasury had previously taken regarding the effect of a state court judgment of escheat on bond ownership). It also rejected the federal government's contentions: 1) that Arkansas's unclaimed property law was preempted by federal law; 2) that the state court judgment was invalid under the doctrine of intergovernmental immunity; and 3) that the state court judicial proceedings violated the due process rights of the former owners of the absent bonds. Further, the Court rejected as premature the federal government's argument that even assuming that Arkansas owned the bonds pursuant to the state court escheat proceedings, Treasury regulations precluded it from recovering the proceeds of bonds that were not in the state's possession.

The issues the Court decided in granting-in-part Arkansas's motion for partial summary judgment were purely legal ones. The legal issues were "controlling" because—if the Court had agreed with the federal government's position—then the result would have been judgment as a matter of law in favor of the government. Instead, the Court has concluded that title to the absent bonds lies with Arkansas, which may entitle it to an award of damages given Treasury's refusal to grant Arkansas's request to redeem the bonds.

The Court reached its decision after careful consideration of the legal issues presented and the parties' arguments, and is convinced that its decision is correct. Nonetheless, the questions of regulatory interpretation presented in this case involve

---

[2] On July 1, 2015 (while the government's motion to dismiss in the related case of LaTurner v. United States was pending, see 133 Fed. Cl. 47, 63–64 (2017)), Treasury issued a Notice of Proposed Rulemaking in which it proposed revising its savings bond regulations to expressly address state court judgments of escheat pursuant to title-based unclaimed property laws. See Regulations Governing U.S. Savings Bonds, 80 Fed. Reg. 37,559-01 (July 1, 2015). After a period of notice and comment, Treasury issued the final revised regulations on December 24, 2015. Regulations Governing U.S. Savings Bonds, 80 Fed. Reg. 80,258-01 (Dec. 24, 2015). As relevant to the issue presented in this case, the revised rule amended 31 C.F.R. § 315.20(b) to add a sentence stating that "[e]scheat proceedings will not be recognized under this subpart." Id. at 80,264. It also added a new provision, § 315.88, which stated that Treasury "may, in its discretion, recognize an escheat judgment that purports to vest a State with title to a definitive savings bond that has reached the final extended maturity date" but only if the bond "is in the State's possession." Id.

3

issues of first impression. Moreover, the Department of Treasury recently engaged in a formal rulemaking process in which it promoted an interpretation of its former regulations that is at odds with the Court's views. See 80 Fed. Reg. at 80,258–60.

In addition, in Estes v. United States Department of the Treasury, 219 F. Supp. 3d 17 (D.D.C. 2016), Judge Cooper—albeit in another context—took a somewhat different view of the Department of Treasury's previous pronouncements regarding whether Treasury would recognize state claims of bond ownership based on state court escheat judgments. This Court concluded that for more than sixty years, the Department of Treasury had advised inquiring states, the public, and the federal courts (including the Supreme Court) that it would recognize claims of ownership that were based on judgments pursuant to title-based escheatment statutes like Arkansas's. Judge Cooper found it less clear than did this Court that Treasury's prior statements governing the recognition of state ownership claims applied when the state did not have the bonds in its possession. See Estes v. U.S. Dep't of the Treasury, 219 F. Supp. 3d at 28–30. Given that this Court relied at least in part on the Department of Treasury's historical interpretation of its regulations, Judge Cooper's perspective provides another basis for the Court to conclude that there exist grounds for a difference of opinion regarding this Court's opinion on this controlling legal issue.[3]

Finally, the Court is of the view that an immediate appeal of its disposition of these legal issues "may materially advance the ultimate termination of the litigation." The parties differ in their view of the time and expense of the discovery that will be required to resolve the remaining issues in this case. The government claims that in order to comply with its discovery obligations, Treasury will be required to search "approximately 3.8 billion savings bond records, at an estimated cost exceeding $100 million and a level of effort exceeding 2000 years of employee time." See Def.'s Mot. App. at 2, ECF No. 32-1 (Declaration of Michael J. McDougle) (emphasis in original). Arkansas, on the other hand, argues that "it is difficult to believe that the technology does not exist to make Treasury's records electronically text-searchable." Pl.'s Resp. in Opp'n to Def.'s Mot. to Certify an Interlocutory Appeal and to Stay Proceedings Pending Appeal (Pl.'s Opp'n) at 13, ECF No. 35.

As Wright and Miller observe, "[t]he advantages of immediate appeal increase" with, among other conditions "the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the

---

[3] The federal government contends that this Court decided a controlling question of law by supposedly "suggest[ing] that Arkansas was entitled to receive the bond serial numbers . . . pursuant to 31 C.F.R. §§ 1.5 and 323.2," Treasury's regulations implementing the Freedom of Information Act (FOIA). Def.'s Mot. at 10–12. The Court referenced those regulations only in summarizing Arkansas's argument. See Lea, 132 Fed. Cl. at 720–21. It did not make any determination regarding Arkansas's right to secure such information under FOIA, which the federal government correctly points out would be beyond this Court's jurisdiction. See Def.'s Mot. at 11.

parties by a wrong ruling." Wright et al., supra, § 3930. Even if there exists technology that the government could employ to reduce the burden, the Court does not doubt that considerable effort and expense will be required to identify the absent bondholders whose last known addresses were in Arkansas. Thus, at the present time, the savings bond records are either contained on microfilm or have been digitized from microfilm but are not readily searchable by address. Further, there are currently eight other cases in this Court in which other states assert claims similar to those asserted by Arkansas.[4] If the Court's decision is found erroneous by the court of appeals on interlocutory review, it will save both the parties and the Court from bearing the burden of an enormous and unnecessary expenditure of effort.

In fact, under the circumstances, it is clear to the Court that an immediate appeal "may materially advance the ultimate termination of the litigation" even if the court of appeals agrees with this Court's reasoning and affirms its decision. Thus, the government likely will remain reluctant to make the investments that will be needed to identify the relevant former bond owners and to redeem the absent bonds to Arkansas (or the other states) before the ownership issue has been finally adjudicated. The Court thus anticipates that contentious and protracted discovery and damages phases lie ahead in this case if they must proceed before an authoritative determination on the question. On the other hand, the Court expects that if its ruling is upheld through subsequent appeals, the parties may be able to work on a cooperative basis to resolve the practical and logistical challenges of the remainder of the litigation.

## II.     The Government's Request for a Stay

Section 1292(d)(3) of Title 28 provides that "[n]either the application for nor the granting of an appeal under this subsection shall stay proceedings in the . . . Court of Federal Claims . . . unless a stay is ordered by a judge of the . . . Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court." The government asks the Court to exercise its discretion to stay the proceedings in this case pending appeal on the grounds that "further proceedings in this case would impose massive burdens on Treasury and the taxpayer, jeopardize fragile bond records, and invade the privacy rights of U.S. savings bond owners." Def.'s Mot. at 12.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even

---

[4] See LaTurner v. United States, No. 13-1011; Sattgast v. United States, No. 15-1364 (South Dakota); Kennedy v. United States, No. 15-1365 (Louisiana); (Arkansas); Ball v. United States, No. 16-221 (Kentucky); Fitch v. United States, No. 16-231 (Mississippi); Loftis v. United States, No. 16-451 (South Carolina); Zoeller v. United States, No. 16-699 (Indiana); Atwater v. United States, No. 16-1482 (Florida). With the exception of LaTurner, on which the Court ruled the same day that it ruled in the present case, the Court has stayed the other cases pending disposition of the instant case.

5

balance." Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 879 n.6 (1998) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936)) (alteration in original).

In this case, the Court concludes that a stay of proceedings is warranted for the same reasons that it has decided to certify its decision for interlocutory appeal in the first instance. As noted above, the burdens of discovery going forward (both in terms of effort and expense) will undoubtedly be formidable given the state of Treasury's savings bond records for the years in question. On the other hand, the Court is not persuaded that Arkansas would be materially prejudiced by a stay of proceedings during the pendency of any appeal, despite its conclusory assertion that "[e]ach day that passes with the Government refusing to cooperate in identifying Arkansas's bonds causes [it] substantial injury." Pl.'s Resp. at 14. Accordingly, the government's motion to stay the case is **GRANTED**.

## CONCLUSION

On the basis of the foregoing, the federal government's Motion to Certify the Court's Order of August 8, 2017 for Interlocutory Appeal and to Stay Proceedings Pending Appeal is **GRANTED**. The Court's Opinion and Order of August 8, 2017 is therefore **AMENDED** to include the following express finding:

> The Court finds that this order involves a controlling question of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Further, this case is **STAYED** pending the court of appeals' disposition of any appeal.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge